Inc. 1335 58 right  right here here here here here here here here here here here here here here here here here here here I think we're ready to proceed Thank you Thank you Good morning, your honors Drew Carson on behalf of the Appellant Cross Appellee Automated Solutions Corporation I'd like to begin by moving the Sixth Circuit to construct a sweat lodge in the attorney conference room Take that into consideration I'd like to reserve five minutes please for rebuttal Your honors, this is an important case It presents an opportunity for this court to weigh in the issue of a party's and council's duties in the age of electronically stored information to preserve and produce relevant information when litigation is reasonably anticipated and on the issue of what remedies are appropriate where, as here, those duties have been willfully violated It also presents the court with the opportunity to reaffirm the crime fraud exception to the attorney-client privilege and most importantly this case presents the court with the opportunity to both guide and remind the bar in this district that the lawyer's paramount duty is to the integrity of the system of justice Suggest that the court below the magistrate judge and the district court failed to apprehend those kinds of standards in their various determinations on the discovery disputes? Which standards, your honor? The standards you were just speaking of encouraging the Sixth Circuit to reaffirm Well, I think what they what they overlooked and misapplied was the uh the district court in its wisdom ordered the forensic examination but inexplicably totally ignored its results. In fact there is no mention of the forensic examination conclusions in the magistrate judge's report and recommendation on the motion for sanctions None at all And the response to the motion for sanctions by Paragon, every point they made was refuted by the forensic examiner putting a supplemental affidavit saying none of this is accurate and none of that was addressed in the district court's opinion So that's my point No, I'm just saying It's unfair to deem that a determination by the district court that it was simply an unpersuasive an unpersuasive report Your honor I'm not impugning the integrity of the district court I'm not saying the district court uh acted in violation of its duties This is about what Paragon did and what its counsel did with respect to their discovery obligations under the federal rules Because this case simply concerned what Paragon did with automated SCDS product after September 16, 2003 And that's the date Paragon lost all rights to the product and the date, not coincidentally the district court ruled that Paragon's duty to preserve arose If this court accepts this simple proposition as the law of this case, then all of Paragon's summary judgment arguments and arguments in opposition determining sanctions and the word of it What are the economic stakes of this case? There's an underlying $5,000 contract, then you're what? Copyright claims? I'm trying to figure out this has been going on forever It seemed to be trying the patience of the magistrate and the district court judge It's just not obvious from the briefs why this has been going on so long. Am I missing? Was there some serious economic upside? Your honor, the case never got to the to the damages point I don't want you to get distracted by the fact that it's not a $5,000 case That was the sale That was the amount of the software sale that a plain dealer didn't The economic stakes is that automated automated product the SCDS product which it gained exclusive rights over as determined by the state court the marketing of that, the sale of that was tortiously interfered with by Paragon Paragon has been using this in lots of other places Paragon marketed it after it lost rights to it Lots of other places, to lots of clients? I think the only sale was to the plain dealer but the reason it went on for so long your honor is that the key reason is that the two chief software engineers whose work is central to the case their software engineer who worked on automated SCDS product, which they had access to when the parties were still under a joint party That's what I'm interested in You're interested in the economic stakes Automated went out of business It was unable to successfully market and sell this product because of the statements Paragon was making into the marketplace and the fact that they were claiming continuing ownership rights in this and no newspaper wanted to touch it while this battle was still going on and once it was a copyright infringement case because we sought to discover what did they do with this product after they lost rights to it? What copies of it did they make? What derivatives of it did they make? Did they port it? What did they do with it? And that evidence as we finally convinced the district court could only be found in their computer systems because they obviously hadn't produced it voluntarily and the district court ordered two things for the forensic examiner to go in there and look for evidence of code process development number one and number two any evidence that anything was deleted and he found compellingly that the personal computers the hard drives of the personal computers of the two chief software engineers had been discarded in 2006 which as the record is clear the protective order in this case was delayed, the entry was delayed for up to a year because of Paragon's insistence that it contained a clause that they could designate materials that would not be accessible to adverse counsel. Magistrate Heeman intervened, she entered a protective order. At the end of 2005 at the beginning of 2006 these emails came across from their clients telling their attorneys, we're not producing any of this stuff But if it's negligence it's negligence, that's usually not a prompt for sanctions But there's compelling reasons under the Zubalaski test they there are four things under the Zubalaski test that are considered at a minimum gross negligence. Has that test been accepted in the Sixth Circuit? The test I don't think has been. It's a district court determination from a New York district judge. That's correct. The law, I think, right? Yes. Okay. She did the first Interesting case, complicated and so forth and so on. I guess I would add to that, hasn't the Second Circuit spoken on it in Chen to some extent? Yes I mean, I could only say that it is it's evolving. See we kind of rolled things back a little bit really. Yeah, I mean it's an evolving it's an evolving area but I think that the Zubalaski cases they talked about in the electronic discovery age there are certain new duties of counsel. One is to issue a written litigation hold even magistrate judge Baumann recognized that wasn't done in this case. To identify the key players and ensure that their electronic and paper records are preserved. Wasn't done. To cease the deletion of emails. For the sake of argument there was sufficient culpability to get a permissive adverse inference instruction. Now link that to the claim. And, if I may be so bold as to supplement what Judge Sutton was asking you five minutes ago, I would say this. What are the numbers that follow the dollar sign according to your client's position? What is this about? What digits or what numerals follow the dollar sign according to your client's theory? Or do you even know? Well according to the client I think there were two questions out there. Are you just back to the dollar sign? Yeah, but it's not with the word just. So it's a $5,000 case, a $50,000 case, a $100,000 case, a $1,000,000 case, a $10,000,000 case, a $1,000,000,000 case. Just pick a number. There was an expert report in the state court. Paragon fired its first set of counsel and sued them for legal malpractice after we won the state court case. All I want to hear is a number. $5,000,000.  it was, actually I think it was $15,000. It was a damages report assessing what the marketable value of the single copy distribution system was. And it's in the record of the district court. Now I understand why this case hasn't settled. If you think this is a $15,000,000 case. Well, Your Honor, there would be 3,000 newspapers purchasing a $5,000 chunk of software. At a time when the newspaper industry ain't exactly doing well. That's true, Your Honor, and that's why there was a small window, there was a small window of yes, the time may have passed through advancing technology, but because of how this case, the delays and the inability to get the discovery we were entitled to, but you know, Your Honor, what it came down to in this case is that we did our job. We didn't do anything improper. We zealously advocated to get the discovery we were entitled to. We asked them to produce all the evidence of what they did with SCDS after they lost all rights to it and it was obviously destroyed. It was never produced. The only evidence we obtained of their work on SCDS was through a third-party subpoena that they didn't even produce that. They produced nothing. These emails, these incriminating emails, they actually carried that strategy out. A bad discovery does not a significant federal case make. Why, Your Honor? No, it looks like exactly what you're trying to do in this case is you have a very frivolous case and all you're trying to do is use discovery to get leverage. No, Your Honor. Your Honor, I'll tell you that's not true. It wasn't frivolous. You'll need to be brief because your time has expired some time ago. Please answer Judge Sutton's question. Just two sentences and then you can do the rest of the rebuttal. Okay. We tried this case in state court. It wasn't a frivolous case. We won. It was determined that they breached the prior contract, Automated didn't breach it, and they actually came in that case to the court with unclean hands. This case was not frivolous. This was this company's business, their lifeline, which was destroyed. This is not a frivolous case. Okay. Mr. Carson, you'll have your full rebuttal. Thank you. May it please the Court, my name is Richard Mitchell. I'm here for the appellee Paragon. And Your Honor, to pick up... We'll handle your cross-appeal in this 15 minutes. Yes, Your Honor.       appellee Paragon. I'm here for the appellee Paragon. What Judge Sutton had just said, that is exactly what has happened in this case. This is taking a meritless case, using discovery to try to force the settlement. We have those two emails. That suggested some smoke. When there's smoke, there's not necessarily fire. Not one piece of evidence has been identified to the court, either in the briefs or in oral argument, showing that anything that Mr. Carson's talking about was relevant. What this case is, it's a case that starts out about $5,000. There's no evidence in the record of any other sales of the Dracy product, which was owned by my client, or the SCDS product that is owned by his client. All of what he's talking about in the state court action was tried in the state court action. And that's part of why the court... They didn't award any damages because they didn't prove any damages. But there is nothing in this case, there is no evidence of damages in this case, period. And when he keeps on trying to raise, when ASC keeps on trying to raise all this stuff about what happened in the state court, well, Judge Wells comes back and says, you tried that already. It's res judicata. You don't have a claim. And that is why much of it is, on many multiple grounds, got thrown out on summary judgment. But doesn't automated claim that there were claims that arose after the state court action was completed, and those matters could not have been adjudicated in the state court? Well, if you look at my brief on page 48, and this is our Court of Appeals brief, ECF, I guess it doesn't have an ECF number, my opening brief, the language is in there that talks exactly about what he's saying. And this is a quote from the state court action. He's seeking an order in joining Paragon from claiming an ownership interest in the software and joining Paragon from interfering with ASC's ownership interest in the software and joining Paragon from interfering with ASC's perspective in actual business relationships in regard to the software. That was all adjudicated back in the state court action. All I really want to know, there are no post-state court claims in your view. I know your brief says that. $5,000, yes. There's one state court, there's one new claim, there's one sale post-state court case for $5,000, which is what they filed a suit about. I think Judge Cole's question relates to race judicata. Oh, then the answer is no, I'm sorry. I thought there were some things that happened after the state court case. Every single thing, he talks about Brent Anderson. There's a whole section in the briefing about Brent Anderson. Brent Anderson was an individual that was hired by Paragon before the ruling in the state court case. His reason that he was hired was at that point, our clients had gone their separate ways, but we still had obligations to the Chicago Tribune to perhaps produce our own SCDS. It was in litigation as to who was ultimately going to have to do it. So he said he made it up in his mind? No, that's Brian Atkins who creates Tracy. And it is confusing because there's lots of little pieces and parts that are moving. But Brent Anderson is the guy who was working on SCDS for Paragon prior to the decision in the state court. So everything that he was doing already was covered by the state court. The only person who did any of the Tracy, Your Honor, was Brian Atkins. It's a simple program. He signs an affidavit saying he took directions from the plane dealer. He made it up in his head. Obviously, it's a simple program. It costs $5,000. It's not very complicated. He signed an affidavit to that. The plane dealer signed an affidavit to that. Automated didn't depose them. Automated didn't depose anybody in this case. They didn't talk to the plane dealer. They didn't question the affidavit of the plane dealer other than saying, well, we don't believe it. Well, that's not evidence. Well, one of the things I think, and maybe you can tell me if I'm wrong, is that Automated claims that after the state court action, Paragon sent letters to Automated clients threatening legal action for one reason or another and that these are subject to redress under various state law theories. Am I accurate about that? Those are matters that could not have been decided or determined in the state court proceeding because the activities occurred after the judgment. To be honest, I can't remember if that was before or after. Regardless, there was no damages ever associated with it. Part of a claim is for damages. One of the elements in any claim, in all of his claims, is for damages. But that's not how claim preclusion works. You don't get into whether they're damages or not. You ask yourself, was this part of the nucleus of common facts and therefore should have all been brought in the original action? That's the question. And if things happen afterwards, you either say, well, issue preclusion covers it, or you've got to come up with some other way of doing it. The district court's claim preclusion and Judge Cole's question seems to suggest that's not a good reason. It was only claim preclusion for part of it. The district court also went through all of the evidence and determined that there was absolutely no evidence in the record showing that our DRACY product was derived from SCDS. The district court actually provided multiple reasons for granting summary judgment. The first one was the district court sat there, looked at the evidence that they said showed that SCDS was derived from DRACY, so that our product was derived from their product, and the district court said there was absolutely no evidence in the record supporting that. And the district court also then found that all of their claims were based on that allegation, or that required evidence, and so reason one for throwing it out was that. An alternate reason was for re studicata. That's not how I interpreted the decision, but... Alright, well, if Your Honor goes back and reads the ultimate order, there's multiple different grounds showing for why summary judgment is granted. And if you look at the evidence... Well, let's talk about sanctions for a moment. Again, this is a case that they're claiming all this bad stuff took place. Look at what Magistrate Judge Perlman had to say about what's going on in the case. And this is in the record, and he said on the record, this case is out of control, and I laid that principally at the door of Plaintiff's Council, meaning that side. So, the perception is our side hadn't done anything wrong from a discovery standpoint. Nonetheless, we did have to go through this electronic discovery. The electronic discovery, and this is a case where electronic discovery is being used. There's $5,000 at issue. Electronic discovery is being used. The first time they do the keyword searching, it results in the equivalence of 9 million documents. So, when they're talking about there's all sorts of fights over electronic discovery, it would cost hundreds and hundreds of thousands of dollars to manage it because the keyword... Did anyone introduce the concept of proportionality when everyone was discussing the scope of discovery that was appropriate in this case? Yes, and we tried to, quite frankly, we tried to settle the case because of exactly that, but they have a very different perception as to what this case is worth. But, nonetheless, we had to go through that  narrowed down to 3.5 million pieces of paper, again, over a case where the only damages that have been presented are $5,000. And, ultimately, within these 3.5 million pieces of paper, computer-generated pieces of paper, ASC does not find a single document supporting their case. So, we spent a significant amount of money going through this process, a significant amount of time going through this process. All they were able to do is find two attorney-client-privileged emails expressing the client's frustration, which I can certainly understand the client's frustration. I wouldn't want to participate in this case either if I was the client. What about the oddity of the district court saying there should be a permissive adverse inference instruction, but then still granting summary judgment? That arises because of the way it went to the magistrate, or that's my understanding. The magistrate, judge, wrote two opinions, one granting summary judgment, another one denying the sanction other than the one that your honor just mentions for one piece of disc that was disposed of. And the way I interpreted what the magistrate judge was doing is, in the event that he was overruled by the district court, because it was a recommendation that he was providing to grant summary judgment, he said there were no original protectable elements that were ever set forth by ASC, therefore he would grant summary judgment. My reading of what he was doing in a separate order was, in the event that Judge Wells would have overruled him and the case were to proceed, he then was providing that within his sanctions report. So I don't see it as being inconsistent. He was, I don't think he would have done that if he did an ultimate decision, but it was only referred to him for a recommendation. All that Judge Wells did then is she wrote her opinion on the summary judgment and then just dropped a footnote saying she thought that the magistrate wrote a good opinion with respect to sanctions. So I don't think that Judge Wells really paid attention to that piece of it. And, I mean, that's my interpretation of it, so I don't believe that it was internally inconsistent. And if you look at the evidence that they keep on talking about, they present their expert's affidavit, Dr. Pelz, and it's very craftily done because all that he does is he keeps on sitting there comparing pieces and parts of our product back in the state court case, when the state court case was still going on, and he says, oh look, what we were working on, what Brent Anderson was working on, and he was working on SCDS because we were still entitled to work on SCDS, looks kind of like SCDS. Well, of course it looks like SCDS because he was working on SCDS, but he never says anything in the affidavit that Tracy is dry from SCDS. There's one line in his affidavit where he sits there and he makes an assumption, which is a false assumption. He sits there and he makes an assumption that the SCDS demo, and just to digress for a moment, again, this is while the state court case was still going on, we were going and we were demoing the product. It's not even code, it's just a dummy product so that you could show it in marketing. And he then makes, he then, the expert makes a false assumption that somewhere in a brief we said that SCDS demo was dry from SCDS, which is not true. We never said that. Not only that, the SCDS demo is vaporware, it's not even code, so it can't be dry from it. From that, he then makes the argument somehow that Tracy looks like SCDS, so if SCDS is dry from, SCDS demo is dry from SCDS, that there must be an issue. But, otherwise the record is completely void of any evidence and is void of any evidence. Finally, I'll talk for a moment about the, about these emails that were improperly used by the other side. These emails were part of the 3.5 million pieces of paper that were produced. They had gone through two filters to make sure that there were no attorney-client privilege. It was a filter by his expert, there was a filter by our expert, so every reasonable diligence was being done to make sure that there was nothing produced attorney-client privilege. They were produced. We had an agreed clawback provision. They did not honor the agreed clawback provision. Instead, they filed these emails with the court. It then became an issue litigated with Judge Wells. We moved to strike. Ultimately, she granted our motion to strike, and I think what she did there is completely correct. They then claimed to have some additional attorney-client privilege emails that they asked her to look at. She denied that because they didn't show any burden of the, to satisfy the crime-fraud exception. If the bench doesn't have any further questions, I'll stop. Apparently not. Thank you, Mr. Mitchell. We request that the district court be affirmed. Thank you. Your Honor, I would, this is a terribly serious case, and when I tried the state court action, Mr. Mitchell wasn't there. It was a declaratory judgment action tried to the bench. All that was tried in that case were the parties' rights, contract rights, vis-à-vis one another. The key finding in the state court case relevant to this case was that Paragon's unilateral termination of the contract was a decision made at their own risk. Clearly, the defendant could have sought legal remedies available to it prior to termination of the contract, but chose not to do so. By terminating the contract, Paragon lost any rights under the contract as of that date. This case is about everything about what happened after September 16, 2003 as determined by the state court, because what happened in the state court is that Paragon unilaterally terminated the contract, said Automate, you're in breach. We own the product. We want it back. Automate said... You quoted maybe a paragraph to this point in the summary judgment papers below on the claim preclusion point. The claim preclusion, Your Honor, how can... The res judicata doesn't apply. But let me... Your Honor, I have... What you're saying is barely raised below. That's all I'm saying. By whom? You. The point of res judicata? Responding to the claim preclusion res judicata point occupied about a page below. Okay. I'm just making the point on that particular claim. I'm just focused on that, not everything else. It's almost as if it was barely raised. Your Honor, we did address it thoroughly in the papers before this court. That happens all the time in forfeiture settings, but we still have to decide whether it was a forfeiture. Your Honor, the simple point is the claims in this case all arise from automated exclusive ownership of SCDS. That wasn't... That didn't come into existence until the state court granted those exclusive rights. So how could claims predicated on exclusive rights to the product be barred by res judicata when they didn't arise? Maybe I'm off here, but I'm wondering if the same preclusion applied to the other claims, tortuous interference and so forth. No, no, no. What the district court said, which just had no legal support, was that because the copyright claim fails, it has fatal implications for the other state law claims because all the other state law claims are contingent on the copyright infringement claims, which has no legal support whatsoever. The Lanham Act claim, the tortuous infringement claims are independent state law claims. But those other claims, not the copyright claims, those other claims have a claim preclusion problem. That's what my question's about. It's a very focused point. It's not about the major focus of this lawsuit. I understand. A few things happened after the state court claim, and I'm just saying this just seems like very much the tail wagging the dog because it was barely addressed below. That's the only point I'm making. It's not about the copyright claim. I understand. And I simply respond that those claims also are not barred because they concern conduct that happened after September 16, 2003. But, Your Honors, if, you know, in these type of settings in my advancing age, if you only had one thing to say, what would it be? And it is this. Paragon is before this court saying that this was a this case was about the theft and appropriation of one company stealing a software product from another company. There before you, the hard drives of their two chief software engineers were destroyed, discarded, gone. And they're telling you, as they told the district court, don't worry. Nothing on those hard drives had any relevance to this case. The backup tapes, don't worry. No relevance. They were overridden nightly. Where the law is clear is that there's a duty to preserve them when the information is not otherwise accessible, and it wasn't otherwise accessible because the hard drives were gone. And everything everything that they've that the third set attorneys brought to the attention of this court. For instance, Brent Anderson was working on SCDS to make it work for the Tribune. I mean, it's ridiculous. The Tribune, the product was up and running with the Tribune  Brent Anderson, the dates he was working on it were after it was up and running with the Tribune. Every claim they've put in their briefs, and I don't want to detract from the paper because I think the papers put the record before you very well, that this is a case that if you don't if you don't take this seriously and you should because it was two individuals' livelihood it deserves merit on that, but it deserves your serious attention because this case will serve instead of a deterrent from litigants engaging in this engaging in this behavior. I appreciate it, Mr. Carson, your time you know, obviously the panel would take this case and every case seriously. I understand. I hope you understand that. The case will be submitted, but I do want to just mention one thing here and apparently parties have tried before and you've been unsuccessful and maybe that's just where this is going to play out. You might at least want to consider contacting our mediation office to see if there's any common ground that can be reached here. We have an excellent mediation office. We as judges have no contact with that office. All discussions are confidential as between you and that office. Mr. Paul Calico is the chief mediator does a wonderful job. I just mentioned it. I don't know that it's something you're willing to consider at this point, but it seems that this litigation has just gone on for a very long period of time and maybe you're just at a juncture where further discussions might be fruitful. Maybe not and if not, then so be it. Again, it's up to you to make contact. We proceed independently of whatever is going on in that office, but I just mentioned it as something for your consideration. Appreciate it and appreciate your time and attention. Thank you both, all three of you for your presence and arguments today. We appreciate it and as I said, the case will be submitted. So thank you.